# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TODD RAYNOR HALL,<br><br>               Plaintiff,<br><br>v.<br><br>AVEDA TRANSPORTATION AND ENERGY SERVICES, INC., FORMERLY HODGES TRUCKING COMPANY, LLC; 77 ENERGY, an Oklahoma Based Corporation; CHESAPEAK ENERGY, an Oklahoma Based Corporation; KEITH BARRET, Individually and as a supervisor with Hodges Trucking Company; BOB HAGGARD, Individually and as a supervisor with Hodges Trucking Company; and JESSICA ARCHER, Individually and as Human Resource Manager for Hodges Trucking Company,<br><br>               Defendants. | Case No. CIV-15-746-M |

## DEFENDANTS SEVENTY SEVEN ENERGY, INC. AND CHESAPEAKE ENERGY'S JOINT MOTION TO DISMISS OR STAY PROCEEDINGS AND COMPEL ARBITRATION AND BRIEF IN SUPPORT

Seventy Seven Energy, Inc.[1] and Chesapeake Energy[2] (collectively referred to herein as "Defendants") appearing specially and without waiver of any defenses, hereby

---

[1] This is the proper legal name for the corporation that Plaintiff apparently served. However, undersigned counsel has repeatedly requested proof of service. On November 19, 2015 Plaintiff's counsel stated that Chesapeake and Seventy Seven Energy were served and that "all other defendants have not been served to date." See Email from Plaintiff's Counsel to Defendants' counsel dated November 19, 2015, Ex. 1. However, on December 4, 2015 Plaintiff's counsel appeared to state that Defendant Aveda had been served. See Email from Plaintiff's counsel to Defendants' counsel dated December 4, 2015, Ex. 2. As no proof of service has been provided for Aveda, it is Defendants' position that Aveda has not been served. Further, Seventy Seven Energy, Inc. reserves the right to contest service if this motion is denied.

1

move the Court to dismiss, or in the alternative, stay these proceedings and compel arbitration of Plaintiff's claims.[3] In support of this Motion, Defendants submit the following brief in support.

## BRIEF IN SUPPORT

On July 9, 2015, Plaintiff Todd Raynor Hall ("Plaintiff") filed this lawsuit against various defendants alleging various claims arising out of his former employment relationship with Hodges Trucking, LLC. See Complaint [Doc. No. 1]. As set out below, during the course of his employment, Plaintiff entered into valid and binding arbitration agreements obligating both he and his employers to resolve all employment-related disputes exclusively via arbitration. These mutual promises to arbitrate claims such as the ones raised in the Complaint are valid and enforceable. Therefore, Defendants seek an order from this Court dismissing this civil action and compelling Plaintiff's claims to arbitration.

**I.     FACTUAL BACKGROUND**

    **A.     The Agreements to Arbitrate Between Plaintiff and Defendants.**

In January, 2012 Plaintiff went to work for Hodges Trucking, LLC, a then wholly owned subsidiary of Chesapeake Energy Corporation. See Declaration of David Treadwell, Ex. 4. At the time of his hire, Plaintiff signed a valid and binding Arbitration

---

[2] There are several entities that contain the name "Chesapeake Energy" on file with the Oklahoma Secretary of State's office. We are uncertain as to which one Plaintiff is referring, and in the style Chesapeake appears to be misspelled.

[3] On November 9, 2015 undersigned counsel emailed Plaintiff's counsel and provided a copy of the applicable arbitration agreement and requested her agreement to arbitrate. To date, no response has been provided thus necessitating the filing of this motion. See email from defense counsel to Plaintiff's counsel dated November 9, 2015, Ex. 3.

Agreement and Dispute Resolution Policy (the "CHK Agreement") which "requires binding arbitration to resolve all disputes . . . which may arise out of or relate to employment." Id.; see also CHK Agreement dated January 16, 2012 at ¶2, Ex. 5.

In June, 2014, Chesapeake Energy Corporation announced a spin off of its oilfield services business, including Hodges Trucking, LLC into a stand alone company, Seventy Seven Energy, Inc. Thus, effective July 1, 2014, Hodges Trucking, LLC became a wholly owned subsidiary of Seventy Seven Energy, Inc. See Treadwell Declaration, Ex. 4.

Like its predecessor, Seventy Seven Energy, Inc. implemented an Arbitration Agreement and Dispute Resolution Policy to address disputes between the company and its employees. Plaintiff signed the Seventy Seven Energy Arbitration and Dispute Resolution Policy (the "77E Agreement") on or about July 25, 2014. See Ex. 6, 77E Agreement. The express purpose of both the CHK Agreement and the 77E Agreement is set forth in a provision titled "**Mandatory Dispute Resolution Policy**":

> Employee acknowledges that the Company has a mandatory Dispute Resolution Policy ("DRP") which requires binding arbitration to resolve all disputes between the Employee and the Company including any such disputes which may arise out of or relate to employment (see also paragraph 5 below). Employee acknowledges that the DRP is to be broadly interpreted to apply to any dispute which Employee and the Company may have between each other, to include disputes over whether claims are covered by the DRP. Employee also acknowledges that the DRP provides mutual benefits for the Employee and Company, to include faster and more economical resolution of employment related disputes.

See Ex. 5 at ¶2 and Ex. 6 at ¶2.

Both the CHK Agreement and the 77E Agreement obligate all employees, as well as the respective companies, to arbitrate <u>all</u> disputes resulting from their employment relationship, of whatever nature, whether in contract or tort, or via statute or other law. <u>See</u> Ex. 5 at ¶¶2, 5 and Ex. 6 at ¶¶2, 5.  More specifically, both Agreements identify several types of claims to which this obligation applies, including claims of alleged harassment, discrimination, or retaliation, under Title VII, claims related to benefits of employment, and claims under Oklahoma or federal common law.[4]  <u>See</u> Ex. 4 at ¶5 and Ex. 5 at ¶5.  The agreements further provide that "both the Employee and the Company give up the right to trial by jury in a court of law for all employment-related disputes." <u>See</u> Ex. 5 at ¶4 and Ex. 6 at ¶4.  The agreements make no attempt to alter the <u>substantive</u> law, or any rights or remedies available therein, but simply provide for an alternative forum for managing a dispute.  <u>See</u> Ex. 5 at ¶¶13, 14 and Ex. 6 at ¶¶13, 14.

Plaintiff received and reviewed a copy of both the CHK Agreement and the 77E Agreement and expressly agreed to be bound by their terms.  <u>See</u> Ex. 5 at p. 4 and Ex. 6 at p. 4.  Plaintiff expressly acknowledged that any employment disputes that may arise out of his employment would be subject to mandatory arbitration under the terms of the agreements, and that his signature certified that he read, understood, accepted, and agreed to be legally bound to all the terms of the agreements.  <u>See</u> Ex. 5 and Ex. 6. In addition, an express provision in both agreements notified Plaintiff that continuing employment would constitute his continued agreement to abide by the terms of the respective

---

[4] Both agreements mandate that "any claim or dispute Employee may have against the Company includes claims or disputes with the Company's owners, directors, officers, managers [and] other employees…" <u>See</u> Ex. 5 at ¶5 and Ex. 6 at ¶5.

agreements.  See  Ex. 5 at ¶4 and Ex. 6 at ¶4 ("Employee understands and acknowledges that by accepting and/or continuing employment with the Company, and thereby agreeing to the terms of the DRP, that both Employee and the Company give up the right to trial by jury in a court of law for all employment-related disputes.").

Plaintiff brings the present action alleging that he was subjected to unlawful discrimination and/or retaliation in his employment.  Specifically, Plaintiff alleges that he was subjected to race discrimination, harassment and retaliation in violation of federal and state law; that Defendants intentionally inflicted emotional distress and that Defendants were negligent in supervising their managers and in policy enforcement.  See Complaint, ¶¶7-34.  Each of the claims asserted by Plaintiff is related to or arises out of his former employment relationship and falls expressly within the terms of the Agreements.  See Ex. 5 at ¶¶2, 5 and Ex. 6 at ¶¶2, 5.

By agreeing to the terms of both the CHK Agreement and the 77E Agreement, Plaintiff knowingly entered into express agreements in writing to arbitrate the claims currently before this Court.  For the reasons set forth below, these agreements must be enforced.

**II.     ARGUMENT AND AUTHORITY**

The FAA, 9 U.S.C. §§ 1 (2002), *et seq.*, expresses "a strong federal policy encouraging the expeditious and inexpensive resolution of disputes through arbitration." Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 39 F.3d 1482, 1488–89 (10th Cir. 1994).  It provides that written agreements to settle controversies by arbitration "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity

for the revocation of any contract." 9 U.S.C. § 2; see also Hill v. Ricoh Americas Corp., 603 F.3d 766, 770–71 (10th Cir. 2010) (quoting 9 U.S.C. § 2). Section 4 of the FAA provides for orders compelling arbitration when one party has failed, neglected, or refused to comply with an arbitration agreement. 9 U.S.C. § 4; Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 25 (1991). Congress enacted the FAA with the express purpose of granting arbitration agreements the same enforceability as any other contract provision. See Volt Info. Sciences, Inc. v. Bd. of Trs., 489 U.S. 468, 474, (1989) (stating that Congress designed the FAA to "overrule the judiciary's longstanding refusal to enforce agreements to arbitrate and place such agreements upon the same footing as other contracts.") (citation omitted); see also DirectTV, Inc. v. Imburgia, 2015 WL 8546242, * (S. Ct. December 14, 2015) (finding that while lower courts may disagree with the strong favor afforded to the FAA, it is "the law of the United States, and … every state must follow it"). When the applicability of arbitration is in dispute, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc., 473 U.S. 614, 626, (1985) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24–25 (1983)).

Although federal law controls with respect to the enforcement of a valid arbitration agreement, courts must look to ordinary state law contract principles to determine whether or not a contract was formed, EEC Inc. v. Baker Hughes Oilfield Operations, Inc., 460 Fed. App'x 731, 736 (10th Cir. 2012) (reversing district court judgment denying motion to compel arbitration), and the validity of an arbitration

6

agreement is determined by state law. Doctor's Assocs. Inc. v. Casarotto, 517 U.S. 681, 686-87 (1996); see also Perry v. Thomas, 482 U.S. 483, 492 n.9 (1987) (noting that "state law, whether of legislative or judicial origin, is applicable *if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally") (emphasis in original). Courts employ traditional principles of state contract law to determine whether there is a valid agreement to arbitrate, see 9 U.S.C. § 2, resolving any doubts about whether an agreement is enforceable—including defenses to arbitrability— in favor of arbitration. Moses H. Cone Mem'l Hosp., 460 U.S. at 24-25. The Agreements must be enforced against the Plaintiff unless he can successfully assert "'generally applicable contract defenses,'" Rent–A–Center, West, Inc. v. Jackson, 561 U.S. 63, 64 (2010), going to the formation of the agreements to arbitrate and/or establish under [9 U.S.C. § 2] that the arbitration clauses should "be invalidated [because of] ... fraud, duress, or unconscionability.'" *Id.* Arbitration must be compelled "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." See Thompson v. Bar-S Foods Co., 174 P.3d 567, 572 (Okla. 2007).

  A. **<u>Plaintiff's Claims Are Arbitrable.</u>**

The Supreme Court, the Tenth Circuit Court of Appeals and the lower courts in the Circuit repeatedly apply the FAA to arbitration agreements formed in the employment setting. The Supreme Court made it clear in Circuit City Stores, Inc. v. Adams that arbitration clauses in employment contracts are enforceable. 532 U.S. 105, 129 (2001); see also Gilmer, 500 U.S. at 27–33 (arbitration agreement between an employee and

employer subjected the employee's age discrimination claim to mandatory arbitration); Shankle v. B–G Maint. Mgmt. of Colo., Inc., 163 F.3d 1230 (10th Cir. 1999) (recognizing that Gilmer reaffirmed the Arbitration Act's presumption in favor of enforcing agreements to arbitrate statutory claims, but holding the agreement unenforceable because of fee-shifting provision); McWilliams v. Logicon, Inc., 143 F.3d 573 (10th Cir. 1998) (affirming compelled arbitration under the ADA); Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 39 F.3d 1482, 1487 (10th Cir. 1994) (Title VII and ADEA claims subject to compulsory arbitration); Strom v. First Am. Prof. Real Estate Services, Inc., No. CIV–09–0504–HE (J. Heaton), 2009 WL 2244211, *5 (W.D.Okla. Jul. 24, 2009) (finding plaintiff's Oklahoma public policy claims were arbitrable); James v. Bobrick Washroom Equipment, Inc., No. CIV-09-145-KEW (J. West), 2010 WL 368727, *2 (E.D.Okla. Feb. 1, 2010) (finding the plaintiff's ADEA and Oklahoma public policy claims were arbitrable). Thus, an arbitration agreement in an employment setting generally results in mandatory arbitration, even after the employee has left the company. Gourley v. Yellow Transp., LLC, 178 F.Supp.2d 1196, 1202–03 (D.Colo. 2001).

> **B.** **There Is A Valid and Enforceable Agreement to Arbitrate In Place Between Plaintiff and Defendants.**

Additionally, applicable state law holds that Plaintiff's agreements to arbitrate can be enforced. In Oklahoma, a valid and enforceable contract requires an offer, acceptance, and consideration. Horton Insurance Agency, Inc. v. Robinson, 824 P.2d 397, 400 (Okla. Civ. App. 1991); Okla. Stat. tit. 15, § 2. Here, with both the CHK Agreement and the

77E Agreement, all three elements were present, and there is no state-law impediment to this Court's enforcement of the arbitration provision in the Agreements.

Plaintiff's Agreements are supported by consideration, both in the parties' reciprocal promises to arbitrate and in the employers' agreements to pay "any administrative fees and all expenses and fees of the arbitrator." See Ex. 5 at ¶10 and Ex. 6 at ¶10. The mutuality of obligation to arbitrate alone, is by definition, sufficient consideration for an agreement to arbitrate. See Hancock v. Am. Tel. & Tel. Co., Inc., No. CIV-10-822-W, 2011 WL 3626785, *6 (W.D. Okla. Aug. 11, 2011) aff'd, 701 F.3d 1248 (10th Cir. 2012), cert. denied, 133 S.Ct. 2009 (2013) (mutual promises between two parties can create a contract, and the mutual promise to arbitrate and to relinquish the right to a trial by jury can constitute the necessary consideration to support the agreement to arbitrate). The essential, core elements of a binding contract under Oklahoma law are present in this case. "Oklahoma law commands that where arbitration has been contracted for it constitutes a substantive and mandatory right." High Sierra Energy, L.P. v. Hull, 259 P.3d 902, 907 (Okla. Civ. App. 2011). Plaintiff entered into binding agreements, and they should be enforced pursuant to federal and state law.

### C. Dismissal or, in the Alternative, A Stay Is Appropriate.

Because all of Plaintiff's claims are covered by the agreements to arbitrate, there is no purpose for the Court to retain jurisdiction and Defendants respectfully urge the Court to dismiss this action in its entirety as opposed to entering a stay pending arbitration. See Armijo v. Prudential Insurance Co. v. America, 72 F.3d 793, 796–97 (10th Cir. 1995) (intimating a district court may dismiss when all claims are arbitrable and the movant

specifically requests dismissal rather than a stay); Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc., 252 F.3d 707, 709–10 (4th Cir. 2001); Green v. Ameritech Corp., 200 F.3d 967, 973 (6th Cir. 2000) ("The weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration."); Bercovitch v. Baldwin Sch., Inc., 133 F.3d 141, 156 n. 21 (1st Cir. 1998); Alford v. Dean Witter Reynolds, Inc., 975 F.2d 1161, 1164 (5th Cir. 1992); Sparling v. Hoffman Constr. Co., 864 F.2d 635, 638 (9th Cir. 1988). Nevertheless, if the Court considers dismissal inappropriate in this case, Defendants respectfully request a stay in the alternative.

## III. CONCLUSION

Plaintiff entered into valid arbitration agreements that apply to all asserted claims against Defendants. Accordingly, Defendants respectfully request that this Court dismiss, or in the alternative, stay these proceedings and compel Plaintiff to pursue his claims, if at all, through arbitration in compliance with his express written agreements to arbitrate.[5]

---

[5] In the event that this Court finds that a material fact issue exists as to whether a contract to arbitrate these disputes was formed, Defendants reserve their right under 9 U.S.C. § 4 to a trial on that issue.

Respectfully submitted,

*s/Michael F. Lauderdale*
Michael F. Lauderdale, OBA #14265
Natalie K. Ramsey, OBA #19548
McAfee & Taft A Professional Corporation
Tenth Floor, Two Leadership Square
211 North Robinson Avenue
Oklahoma City, OK  73102-7103
Telephone:   (405) 235-9621
Facsimile:    (405) 235-0439
mike.lauderdale@mcafeetaft.com
natalie.ramsey@mcafeetaft.com

**ATTORNEYS FOR DEFENDANTS SEVENTY SEVEN ENERGY INC. AND CHESAPEAKE ENERGY CORPORATION**

## CERTIFICATE OF SERVICE

I hereby certify that on December 21, 2015, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following registrants:

Traci L. Rhone
Rhone & Associates, L.L.C.
527 N.W. 23rd Street, Suite 200
Oklahoma City, OK  73103
trhone@coxinet.net

**ATTORNEYS FOR PLAINTIFF**

s/*Michael F. Lauderdale*
Michael F. Lauderdale